UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILFRED LEE HOLMES, | : |
| Plaintiff, | : Civil Action No. 16-1434 (ES)(MAH) |
| v. | : OPINION |
| CHRIS CHRISTIE, etc., et al., | : |
| Defendants. | : |

Presently before the Court is Plaintiff's motion for the appointment of pro bono counsel pursuant to 28 U.S.C § 1915(e)(1). *See* Motion to Appoint Counsel, Jan. 24, 2022, D.E. 52. Pursuant to Federal Rule of Civil Procedure 78, the Undersigned has considered this matter on the papers. For the reasons set forth below, Plaintiff's motion is granted.

**I.    BACKGROUND[1]**

On March 14, 2016, Plaintiff filed a pro se Complaint pursuant to 42 U.S.C. § 1983, alleging twelve causes of action against Defendants former Governor Chris Christie, David W. Thomas, James Plousis, Samuel J. Plumeri, Stuart Rabner, Carmen Messano, Margaret M. Hayden, and John Tassini. Compl., D.E. 1. On March 15, 2017, the Court filed a Memorandum & Order granting Plaintiff in forma pauperis status pursuant to 28 U.S.C. § 1915(a) and permitting only Plaintiff's ex post facto and due process claims to proceed against three Defendants, David W. Thomas, James Plousis, and Samuel J. Plumeri. Memorandum & Order, D.E. 10.

---

[1] The procedural history of this matter is extensive and complex. Because this Court writes predominantly for the parties, the Background will be abbreviated, elaborating only where necessary for resolution of the instant motion.

Plaintiff, who had been convicted on charges of murder and manslaughter while on parole in the early 1970s and sentenced to life in prison with the possibility of parole, became eligible for parole in 2001. *Holmes v. Christie*, 14 F.4th 250, 256 (3rd Cir. 2021). The New Jersey State Parole Board denied Plaintiff release at that time. *Id.* In 2012, after a subsequent parole hearing, the Parole Board again denied Plaintiff parole. *Id.* Plaintiff claims that the Parole Board improperly denied him parole in 2012 by applying the 1997 Amendments[2] to the Parole Act in violation of the *ex post facto* clause. Compl., ¶¶ 58, 60 (f). Plaintiff also alleges that the Parole Board's approach violated the due process clause. *Id.*, ¶¶ 60 (c), (i).

On June 22, 2017, Defendants David W. Thomas, James Plousis, and Samuel J. Plumeri filed a motion to dismiss the Complaint, D.E. 18, which the District Court granted in an Opinion and Order on December 12, 2018. Opinion & Order, D.E. 43, 44. Plaintiff appealed. D.E. 45. The Third Circuit affirmed dismissal of the Plaintiff's due process claim, but vacated the dismissal of Plaintiff's ex post facto claim, and remanded the matter "for discovery to determine whether the retroactive application of the 1997 Amendments to Holmes 'create[d] a significant risk of prolonging [his] incarceration." *Holmes*, 14 F.4th at 268 (quoting *Garner v. Jones*, 529 U.S. 244,

---

[2]  The 1997 Amendments that are relevant to Plaintiff's ex post facto claim, and thus, this Opinion include:

> • **The All-Information Provision:** Consistent with the Commission's recommendation, the Amendments eliminated the prohibition against reviewing old information. *Compare* N.J. Stat. Ann. § 30:4-123.56(c) (2011), *with* N.J. Stat. Ann. § 30:4-123.56(c) (1996). Under the new regime, the Board enjoys free rein to revisit an inmate's criminal history during successive hearings.
>
> • **The Risk-Assessment Requirement:** The Amendments also instructed the Board to prepare an "objective risk assessment" before every parole hearing, including successive hearings. N.J. Stat. Ann. § 30:4-123.52(e) (2001). This assessment must incorporate old information —including an inmate's "educational and employment history" and "family and marital history" —along with any other "static and dynamic factors which may assist the [B]oard." *Id.*

*Holmes*, 14 F.4th at 256.

251 (2000)). Once the case was remanded and reopened, Plaintiff filed the instant motion for the appointment of pro bono counsel. Mot. for Appt. of Counsel, January 24, 2022, D.E. 52.

## II.     DISCUSSION

In civil cases, neither the Constitution nor any statute gives civil litigants the right to appointed counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). District courts, however, have broad discretion to determine whether appointment of counsel is appropriate under 28 U.S.C. § 1915(e). *See Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). Appointment of counsel may be made at any point in the litigation, including *sua sponte* by the Court. *Montgomery*, 294 F.3d at 498.

In the Third Circuit, the Court considers the framework established in *Tabron v. Grace*. *Id.* at 498–99. Under the *Tabron* framework, the Court must first assess "whether the claimant's case has some arguable merit in fact and law." *Id.* at 499 (citing *Tabron*, 6 F.3d at 155.) If the applicant's claim has some merit, the Court considers the following factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham*, 126 F.3d at 457–58 (citing *Tabron*, 6 F.3d at 155–56, 157 n.5). This list is not exhaustive, but provides a guidepost for the Court. *Montgomery*, 294 F.3d at 499 (citing *Parham*, 126 F.3d at 457). A court's decision to appoint counsel "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157–58. In addition, the United States Court of Appeals for the Third Circuit has stated that courts should "exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499.

As a threshold matter, Plaintiff's case has merit sufficient for purposes of the *Tabron* analysis. A pro se plaintiff's complaint is held to a less stringent standard. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Furthermore, "civil rights allegations are not meritless unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his or her claim." *Piserchia v. Bergen County Police Dept.*, No. 12-2520, 2013 WL 4436183, at *2 (D.N.J. Aug. 15, 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Here, while it remains to be seen whether Plaintiff can prove his ex post facto claim, the Third Circuit reversed the District Court's dismissal with respect to Plaintiff's ex post facto claim, remanding the case for discovery. *Holmes*, 14 F.4th at 268. The Third Circuit determined that Plaintiff had stated a plausible claim that the Parole Board implemented the all-information provision of the 1997 Amendments in a way that created a significant risk of prolonging his term of imprisonment in violation of the ex post facto clause. *Id.* at 263. Thus, for the limited purpose of the *Tabron* analysis, the Court finds that Plaintiff's ex post facto claim sets forth a cognizable cause of action.

Turning to consideration of the *Tabron* factors, the Court finds that the majority demonstrate that appointment of counsel is warranted at this time. First, the Court must consider whether Plaintiff can present his own case. This factor weighs decidedly in Plaintiff's favor. When considering this factor, courts typically consider a plaintiff's "education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6 F.3d at 156. If a plaintiff is incarcerated, courts will also consider any constraints that exist because of that confinement. *Id.* Here, Plaintiff certifies that "the entirety of the pleadings, briefs, appendices, motions and requests for discovery filed in this action have been prepared by another prisoner" and if there is an evidentiary hearing, he will not be able to adequately represent himself. Mot. for Appt. of

Counsel, Certification of Wilfred Lee Holmes, D.E. 52-2, ¶¶ 3, 4.  Given that Plaintiff is incarcerated and has had another prisoner helping him with this litigation, and the fact that the Court cannot foreclose the possibility that there may be the need for an evidentiary hearing, the Court finds that Plaintiff will not be able to present his case on his own effectively.  Thus, Plaintiff's inability to effectively represent himself weighs in favor of the appointment of counsel.

Second, the Court must also consider the complexity of the claims.  Complexity supports appointment "where the law is not clear, [as] it will often serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Tabron*, 6 F.3d at 156 (quoting *Macklin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981)); *accord Montgomery*, 294 F.3d at 502-03.  Courts also consider "the proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459; *see also Montgomery*, 294 F.3d 502-03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised plaintiff's case).  Furthermore, this factor should be considered in conjunction with evidence speaking to the plaintiff's capacity to present his own case. *Montgomery*, 294 F.3d at 502 (citing *Tabron*, 6 F.3d at 156).  The complexity of Plaintiff's ex post facto claim weighs in favor of the appointment of counsel because establishing the claim will require an understanding of, *inter alia*, the Ex Post Facto Clause; New Jersey's complicated parole system; and the 1997 Amendments to the Parole Act, particularly, the all-inclusion provision and risk-assessment requirement of those Amendments.  The legal issues that will arise in this matter may be quite nuanced and their significance may escape someone with little ability to present his own case.  Moreover, as addressed more fully in the next factor, discovery will be

complex. Taken together with Plaintiff's inability to present his own case, the complexity of Plaintiff's claim weighs in favor of appointing Plaintiff counsel.

Third, the Court must next consider the degree of factual investigation necessary and Plaintiff's ability to conduct it. This factor weighs heavily in favor of granting Plaintiff appointment of pro bono counsel in light of the Third Circuit's decision indicating that Plaintiff's claim "is a 'fact-intensive inquiry,'" and that the Court "may wish to sequence" discovery. *Holmes*, 14 F.4th at 260, 263. Specifically, the Third Circuit suggested the Court might sequence discovery "as to the practical effect of the pre-1997 rules, the Board's consideration of past conduct in Holmes's case, and whether their consideration created a significant risk of prolonging his imprisonment relative to the old rules." *Id.* at 263. Discovery in this action likely will be complex, voluminous, and protracted. It is clear that Plaintiff lacks the ability to conduct an adequate factual investigation without the assistance of counsel. Thus, the third *Tabron* factor weighs in favor of the appointment of counsel.

Fourth, it is premature for the Court to conclude that this case will turn on credibility determinations. Because "it is difficult to imagine" a case where credibility is not important, the United States Court of Appeals for the Third Circuit has specified that "when considering this factor, courts should determine whether the case [is] solely a swearing contest." *Parham*, 126 F.3d at 460. At this early stage of the litigation, the extent to which this case will rest on credibility determinations is not yet apparent. Accordingly, this factor weighs neither in favor of nor against appointing counsel.

Fifth, it is conceivable that expert testimony will be required at trial. As Plaintiff aptly points out, expert testimony may be required to assess "aluminous discovery regarding decades of

statistical data." Mot. for Appt. of Counsel, January 24, 2022, D.E. 52, at 6. Thus, the fifth factor weighs in favor of appointing pro bono counsel.

Lastly, the sixth factor, whether Plaintiff can attain and afford counsel, weighs in favor of granting Plaintiff's motion for appointment of counsel. Plaintiff has been incarcerated for nearly 50 years, with little ability to obtain counsel on his own. Moreover, when Plaintiff applied for in forma pauperis status on May 24, 2016, he indicated that he was making less than $150 per month in prison. The District Court found this sufficient to grant him in forma pauperis status and did so on March 15, 2017. Application to Proceed in Forma Pauperis, D.E. 8; Memorandum/Order, D.E. 10. Accordingly, the sixth factor weighs in favor of granting Plaintiff's motion for pro bono counsel.

Plaintiff's motion to appoint pro bono counsel meets most of the *Tabron* factors, and, therefore, the Court finds that appointment of pro bono counsel is appropriate at this time. *Parham*, 126 F.3d at 461 (finding appointment appropriate where most factors are met). For the reasons set forth above, the Court grants Plaintiff's motion to appoint pro bono counsel.

### III. CONCLUSION

A balancing of the factors set forth above weighs in favor of granting Plaintiff's motion for the appointment of pro bono counsel. Therefore, the Court grants Plaintiff's motion to appoint pro bono counsel, D.E. 52.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: March 29, 2022