## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| _____ | : | |
| **WILFRED LEE HOLMES,** | : | **Civil Action No. 16-1434 (ES) (MAH)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **OPINION** |
| | : | |
| **CHRIS CHRISTIE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

**HAMMER, United States Magistrate Judge**

### I.    INTRODUCTION

This matter comes before the Court upon Plaintiff's, Wilfred Lee Holmes ("Plaintiff"), motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15.  *See generally* Mot. to Am., D.E. 83.  Plaintiff moves to amend his Complaint so as to demand money damages.  Defendants, David W. Thomas, James Plousis, and Samuel J. Plumeri (collectively "Defendants"), have filed a letter brief in opposition.  *See generally* Letter Br. in Opp'n to Mot. to Am., D.E. 86.  The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Plaintiff's motion without oral argument pursuant to Fed. R. Civ. P. 78, Local Civ. Rule 78.1(b).  For the reasons stated below, Plaintiff's motion to amend is **denied**.

### II.    BACKGROUND & PROCEDURAL HISTORY

Plaintiff was convicted on charges of murder and manslaughter while on parole in the early 1970s and sentenced to life in prison with the possibility of parole.  *Holmes v. Christie*, 14 F.4th 250, 256 (3rd Cir. 2021).  He later became eligible for parole in 2001, but the New Jersey

State Parole Board denied Plaintiff's application for release.  *Id.*  In 2012, the Parole Board once again denied Plaintiff parole.[1]  *Id.*

On March 14, 2016, Plaintiff filed a pro se Complaint pursuant to 42 U.S.C. § 1983.  *See generally* Compl., D.E. 1.  Plaintiff alleged twelve causes of action against Defendants, including due process rights and ex-post facto clause claims.[2]  *Id.*  Plaintiff sought "declaratory and prospective injunctive relief." *Id.* at ¶ 1.  The Complaint did not seek monetary damages.  On March 15, 2017, following Plaintiff's application to proceed in forma pauperis, the Court permitted Plaintiff's due process and ex-post facto claims to go forward.  *See* Mem. & Order, D.E. 10.

On June 22, 2017, Defendants moved to dismiss Plaintiff's Complaint.  Mot. to Dismiss, D.E. 18.  Plaintiff opposed Defendants' motion.  *See generally* Opp'n to Mot. to Dismiss, D.E. 22.  On December 12, 2018, the District Court granted Defendants' motion to dismiss.  *See generally* Order, D.E. 43.  Plaintiff appealed the Court's decision to the Third Circuit Court of Appeals.  *See* Notice of Appeal, D.E. 45.  On September 21, 2021, the Third Circuit affirmed the District Court's dismissal of Plaintiff's due process claim.  *See Holmes*, 14 F.4th at 268.  However, it vacated the District Court's dismissal of Plaintiff's ex-post facto claim and remanded for further "discovery to determine whether the retroactive application of the 1977 Amendments to Holmes 'created[d] a

---

[1]  Prior to his federal case in the District of New Jersey, Plaintiff appealed the Parole Board's decision in state court.  The New Jersey Appellate Division denied Plaintiff's appeal and upheld the Board's decision in full.  *Holmes v. N.J. State Parole Bd.*, No. A-1315-13T, 2015 WL 4544689, at *7 (N.J. Super. App. Div. July 29, 2015).

[2]  Plaintiff initially named former Governor Chris Christie, David W. Thomas, James Plousis, Samuel J. Plumeri, Stuart Rabner, Carmen Messano, Margaret M. Hayden, and John Tassini.  *See generally* Compl., D.E. 1.  The Court has only permitted Plaintiff's ex-post facto claim to proceed against David W. Thomas, James Plousis, and Samuel J. Plumeri.  *See* Mem. & Order, D.E. 10, at ¶¶ 2,4.

significant risk of prolonging [his] incarceration.'" *Id.* at 258-67 (quoting *Garner v. Jones*, 529 U.S. 244, 251 (2000)).

Once the case was remanded and reopened, Plaintiff sought appointment of pro bono counsel, which this Court granted on March 29, 2022. *See Holmes v. Christie*, No. 16-1434, 2022 WL 909848, at *4 (D.N.J. Mar. 29, 2022). Following that appointment, this Court held several status conferences, established pretrial deadlines, and the parties began to engage in discovery. *See generally* Br. in Supp. of Mot. to Am., D.E. 83-1, at 5; Minute Entry for Telephone Status Conference, D.E. 76; Order Regarding April 5, 2023 Telephone Conference, D.E. 78.

On March 2, 2023, the Parole Board granted Plaintiff parole, and he was released on April 13, 2023. *See* Mot. to Am., D.E. 83, at 5. As a result of Plaintiff's release, Defendants posited that Plaintiff's claims were moot because the Complaint sought only declaratory and injunctive relief. *Id.*

On July 14, 2023, Plaintiff filed the instant motion to amend his Complaint to demand monetary damages. *See generally id.* Plaintiff argues this Court should grant his request because he now possesses the benefit of counsel, and therefore "should be afforded the opportunity to amend . . . and address any deficiencies" within the initial Complaint. *Id.* at 8. *See also* Reply Br., D.E. 89, at 3-5. Plaintiff also argues that any amendment will not prejudice Defendants, as they are in the initial stages of discovery, following the Third Circuit's decision. Mot. to Am. at 12-13; Reply Br. at 3. Plaintiff also contends that the proposed amendment would not be futile. Reply Br. at 5-9.

Defendants contend this Court should deny Plaintiff's motion because the proposed amendment is futile under the doctrines of absolute and qualified immunity. Letter Br. in Opp'n to Mot. to Am., D.E. 86, at 4-16. Further, Defendants argue that Plaintiff unduly delayed in

3

seeking to add the demand for monetary damages, and that allowing the amendment would unduly prejudice Defendants by "repaint[ing] the landscape of this case." *Id.* at 16-19.

### III.   ANALYSIS

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).  However, "if there is good cause to amend, the Court will then turn to Rule 15 to determine whether to permit [Plaintiff] to file its amended pleading as justice so requires." *Nasa Machine Tools Inc. v. FAMA Tech. Inc.*, No. 18-2872, 2019 WL 7207503, at *2 (D.N.J. Dec. 27, 2019).

#### A.   Rule 16

As a preliminary matter, this Court notes that neither party addresses Rule 16 as it relates to Plaintiff's instant motion.  However, "the fact that neither party specifically names Rule 16 or its required good-cause showing does not preclude the Court from applying that standard to plaintiff's motion to amend." *See Lloyd-Jones v. Connolly*, No. 20-912, 2022 WL 3572837, at *2 (D.N.J. Aug. 19, 2022) (internal quotations omitted).  On October 16, 2017, this Court entered a Pretrial Scheduling Order ("PTSO").  The PTSO set a February 1, 2018 deadline for adding additional parties or amending Plaintiff's Complaint.  PTSO, D.E. 29, at ¶ 12.  Plaintiff's motion to amend was filed on July 14, 2023, five years after the deadline established in the PTSO.  *See*

PTSO, D.E. 29.[3]  Therefore, a Rule 16 analysis is required to address Plaintiff's motion.  *See Korrow v. Aaron's, Inc.*, 300 F.R.D. 215, 220 (D.N.J. 2014); *see also Velto v. Reliance Standard Life Ins. Co.*, No. 10-1829, 2011 WL 810550, at *4 (D.N.J. Mar. 1, 2011) (finding the plaintiff was incorrect to assume that the Court's text order providing a deadline for the plaintiff's motion to amend eliminated the plaintiff's requirement to demonstrate good cause under Rule 16). Accordingly, this Court does so, and determines that there is no good cause for Plaintiff to amend his Complaint under Rule 16.

Rule 16 authorizes courts to enter schedules for proceedings.  Fed. R. Civ. P. 16.  The purpose of Rule 16 is to provide for judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite the speedy and efficient disposition of cases.  *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir.1990).  "[O]nce the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate good cause for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading."  *Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 280 (3d Cir. 2010) (internal quotations omitted).  Therefore, a motion to amend filed after the PTSO's deadline is subject to a heightened level of scrutiny.  *Korrow*, 300 F.R.D. at 220.  Only if the moving party has made the requisite showing of good cause under Rule 16 will the Court consider "whether the proposed amended pleading meets the [Rule] 15(a) standard."  *Home Semiconductor Corp. v.*

---

[3]  Although this Court entered an Amended PTSO on September 30, 2022, following the Third Circuit's decision, the deadline to amend remain unchanged.  Indeed, there is no indication from the record that any party sought to extend that deadline.  *See* Am. PTSO, D.E. 69; *see also Napolitano v. Ragan & Ragan PC*, No. 15-2732, 2017 WL 278475, at * 3 (D.N.J. Jan. 20, 2017) (holding that a Rule 16 analysis was appropriate where an Amended PTSO did not address or change the previously set deadline for filing amended pleadings, and therefore the deadline in the initial PTSO was appropriate).

*Samsung Elecs. Co.*, No. 13-2033, 2019 WL 2135858, at *2 (D. Del. May 16, 2019); *accord Nasa*, 2019 WL 7207503, at *2.

Whether the good cause requirement under Rule 16 is met is dependent on the diligence of the party seeking to modify the scheduling order. *Korrow*, 300 F.R.D. at 220. Therefore, "if the party was not diligent, there is no good cause for modifying the scheduling order and allowing the party to file a motion to amend its pleading." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007). A showing of good cause illustrates that, despite the movant's attentiveness, "the deadlines set forth in the scheduling order could not reasonably be met." *Id.*; *see also Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990). In addition, "good cause may be satisfied if the movant shows that their delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" *Fermin v. Toyota Material Handling, U.S.A., Inc.*, No. 10-3755, 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012) (alteration in original) (quoting *Phillips v. Greben*, No. 04-5590, 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006)).

Notably, "the absence of prejudice to the non-moving party does not constitute good cause." *Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co.*, No. 09-6259, 2011 WL 6303258, at *3 (D.N.J. Dec.16, 2011). Courts have consistently found that "the standard is not satisfied when a party was aware of the facts that would lead it to amend and failed to act on it." *Roggio v. F.B.I.*, No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug.17, 2011). "[A] party is presumptively not diligent if, at the commencement of the lawsuit, the party knows or is in possession of information that is the basis for that party's later motion to amend." *Chancellor*, 501 F. Supp. 2d at 702. *See also Kennedy v. City of Newark*, No. 10-1405, 2011 WL 2669601, at *2

(D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed.").

As noted, neither party asserts an argument as to whether good cause exists for this Court to extend the deadline for amending pleadings set forth in the PTSO.  But this Court's independent review of the matter compels the conclusion that the proposed amendment does not survive scrutiny under Rule 16.

Plaintiff's request to amend his Complaint, approximately five years following the deadline to amend the pleadings, is not diligent.  *See Lee v. Park*, 720 Fed. App'x 663, 668-69 (3d Cir. 2017) (affirming the District Court's decision to deny leave to amend a complaint sixteen months after the deadline when the plaintiff "simply wanted to add a new cause of action based on the same facts found within the initial complaint").  Plaintiff's proposed amendment does not argue new facts revealed in any additional discovery produced in the wake of the Third Circuit's decision.  *See Holmes*, 14 F.4th at 258-67; *see also Fermin*, 2012 WL 1393974, at * 6 (finding that Rule 16 allows that "information obtained after a deadline to amend can constitute good cause").  Rather, Plaintiff seeks to assert monetary damages.  Plaintiff could have initiated that amendment well before the deadline to amend expired.  Plaintiff also could have sought to extend the deadline to amend.  *See Alfone v. Town of Boonton*, No. 15-6656, 2017 WL 4366981, at * 4 (D.N.J. Sept. 29, 2017) (holding movant did not show due diligence where "a simple review" would have revealed information necessary to file motion to amend before deadline's expiration).

The Court is mindful that for much of this litigation, and certainly while the deadline to amend remained viable, Plaintiff was a pro se litigant.  And it is true that the Court affords a degree of leniency to pro se litigants.  However, the law is well settled that pro se litigants still must comply with the Court's deadlines or show good cause for failing to do so.  *See Huertas v. U.S.*

*Dep't of Educ.*, No. 8-3959, 2010 WL 2771767 (D.N.J. 2010) ("[C]ourts are unwilling to allow pro se litigants to disregard court orders and perpetually delay trial proceedings"). It is not beyond the capacity for a pro se litigant to demand monetary damages. Such a demand is rudimentary and does not require specialized legal training. Moreover, Plaintiff's initial lack of representation does not erase the fact that he possessed all the necessary information to amend his pleading prior to the February 1, 2018 deadline, or at least seek an extension to do so. *See Naughton v. Harmelech*, No. 9-5450, 2015 WL 12835620, at *4, n.4 (D.N.J. Jan. 30, 2015) (finding no good cause under Rule 16 where the pro se plaintiff attempted to amend his counterclaim based on information already in his possession years following the deadline to amend). Nor is this an instance where Plaintiff, as a pro se, missed the deadline set forth in the PTSO by mere days or even months. *But see Prince v. Aiellos*, No. 9-5429, 2012 WL 1883812, at *3 (D.N.J. May 22, 2012) (finding no good cause where the pro se plaintiff sought to amend his complaint five months after the PTSO deadline). Here, Plaintiff's July 15, 2023 filing is more than five years beyond the February 1, 2018 deadline without any adequate reason for this delay. Indeed, the District Court did not dismiss Plaintiff's Complaint until ten months following the deadline set forth in the PTSO. Thus, the deadline for amending was already well past when Plaintiff appealed that dismissal to the Third Circuit. Further, the record reveals that prior to Plaintiff's appointment of counsel, he actively engaged with Defendants and the Court. *See* Letter Requesting Extension to Respond to Mot. to Dismiss, D.E. 19; Opp'n to Mot. to Dismiss, D.E. 22; Letter to Court Regarding Supplemental Submission to Opp'n to Mot. to Dismiss, D.E. 24. Indeed, Plaintiff successfully filed an appeal in the Third Circuit of the District Court's Opinion and Order dismissing Plaintiff's Complaint.[4]

---

[4]  While Plaintiff's appeal in the Third Circuit was briefed and argued by appointed counsel, Plaintiff brought his appeal without counsel's assistance. *See Holmes*, 14 F.4th 250 at 256, n.4.

Plaintiff contends, in the context of Rule 15, that the recent appointment of counsel should afford him the opportunity to amend or correct any prior deficiencies in the Complaint. Such an argument might have some appeal if Plaintiff merely sought to correct a technical error or inconsequential pleading deficiency. But here, Plaintiff seeks to introduce an entirely new form of relief. And Plaintiff's submissions, and the procedural history of this case, strongly suggest that Plaintiff's release, not the appointment of counsel, precipitated the request. Br. in Supp. of Mot. to Am., D.E. 83-1, at 5-6, 11; *see also* Reply Br., D.E. 89, at 4. Even accounting for Plaintiff's pro se status for the earlier part of this litigation, that course of action does not demonstrate diligence under Rule 16. *See Berk v. Ritz Condominium Association*, No. 19-20666, 2021 WL 5277459, at * 4-5 (D.N.J. Nov. 12, 2021) ("Asserting new legal theories, more than a year past the Court's scheduling deadline, in the absence of new facts or information does not constitute due diligence."). At bottom, Plaintiff has simply not excused his multi-year delay with a showing of good cause as required by Rule 16.

### B.  Rule 15

Even assuming Plaintiff could establish good cause, leave to amend would be denied under Rule 15 on the grounds of undue delay, undue prejudice and futility. "Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The Court should freely give leave when justice so requires.'" *Spartan Concrete Prods., LLC v. Argos USVI, Corp.,* 929 F.3d 107, 115 (3d Cir. 2019) (quoting Fed. R. Civ. P. 15 (a)(2)). The Court may deny a motion to amend the pleadings only where there is (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice; (4) repeated failures to cure deficiencies; or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Long v. Wilson,* 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations

omitted); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment.").

      **i.**     **Undue Delay & Undue Prejudice**

Defendants argue that Plaintiff unduly delayed in proposing the amendment because he waited seven years to do so, and because the proposed amendment pleads no new facts.  Letter Br. in Opp'n to Mot. to Am., D.E. 86, at 16-18.  In addition, Defendants argue Plaintiff's delay in seeking to amend the Complaint will prejudice them because the amendment "would repaint the landscape of this case to determine the effect of the Parole Board's decision and resulting damages." *Id.* at 19. Defendants claim this amendment would require additional discovery into a myriad of topics such as Plaintiff's earnings before and after his release, analysis of medical records, and other related expert witnesses or opinions. *Id.*  Plaintiff counters that there is no evidence of undue delay, as Plaintiff seeks to amend his Complaint now that he possesses the benefit of counsel.  Br. in Supp. of Mot. to Amend., D.E. 83-1, at 10-11; Reply Br., D.E. 89, at 5. Further, Plaintiff claims that his proposed amendment would not prejudice Defendants, since discovery is currently ongoing.  Br. in Supp. of Mot. to Amend, D.E. 83-1, at 12-13.

Much of the analysis for undue delay under Rule 15 naturally overlaps with the good-cause analysis under Rule 16.  But the standards are distinct, and hence the Court separately considers the undue-delay element of Rule 15.  A party's delay, by itself, is insufficient to justify denial of leave to amend. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).  "However, 'at some point, the delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.'" *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  The inquiry into undue delay includes consideration of

the court's "[i]nterests in judicial economy and finality," as well as a "focus on the movant's reasons for not amending sooner." *USX Corp. v. Barnhart*, 395 F.3d 161, 168 (3d Cir. 2004).

Further, it is well-established that "[p]rejudice to the non-moving party is the touchstone for denial of an amendment." *Cornell and Co., Inc. v. Occupational Safety and Health Review Commission*, 573 F.2d 820, 823 (3d Cir. 1978); *see also Johnson v. New Jersey*, No. 18-11299, 2023 WL 3952985, at *4 (D.N.J. June 12, 2023) (quoting *Cureton*, 252 F.3d at 273) (stating the court's focus is specifically "on the hardship to the defendants if the amendment were permitted"). In assessing prejudice, courts consider whether the proposed amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Long*, 393 F.3d at 400.

This Court finds Plaintiff's request to amend his Complaint unduly delayed for similar reasons expressed in its Rule 16 analysis. Plaintiff's request comes years following his initial filing. *See Wiley v. City of Newark*, No. 16-2530, 2022 WL 3013075, at *5 (D.N.J. July 29, 2022) (finding undue delay where the plaintiff sought leave to six years following the initial filing). Plaintiff possessed countless opportunities over the course of this already aged litigation to amend his Complaint to attempt to include a claim for monetary damages. These opportunities remained available to Plaintiff regardless of his status as a pro se litigant. *See Santos v. Bledsoe*, No. 10-1599, 2011 WL 3739355, at *4 (M.D. Pa. 2011) (finding the pro se plaintiff's delay in moving to amend his complaint was undue "when the plaintiff had previous opportunities to amend" but failed to do so (quoting *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008))); *see also United States ex rel. McDermott v. Life Sources Servs.*, No. 19-15360, 2023 WL 2238550, at

11

*5 (D.N.J. Feb 27, 2023) (finding undue delay when the relator sought to add parties to the complaint when she was apparently aware of those parties for approximately five months).

Further, as noted, Plaintiff's proposed amendment is not before this Court based on information uncovered in discovery that occurred since the Third Circuit's ruling. *See Kronfeld v. First Jersey Nat'l Bank,* 638 F. Supp. 1454, 1460 (D.N.J. 1986) (granting moving party's motion to amend under Rule 15 upon its discovery of new evidence and where it did "not appear that the amendment would cause undue delay or that [movants had] a dilatory motive"). As noted above, it appears that Plaintiff's release triggered the application to amend. While the pleading philosophy of Rule 15 is liberal, it is not limitless, nor can it be used to salvage claims no longer viable. *See Berk*, 2021 WL 5277459, at * 4-5 (finding the pro se plaintiff's strategy of seeking to amend her complaint because she perceived her claims legally defective was qualified as improper "wait and see" tactics); *see also Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640-41 (E.D. Pa. Apr. 1, 2009) (stating the plaintiff may not be granted a "'do-over' to assert new legal theories and permutations of its prior claims that it could have asserted much earlier" under Rule 15); *USX Corp.*, 395 F.3d at 161 (affirming denial of leave to amend on the ground of unreasonable delay where the movant waited more than three years to amend). Accordingly, this Court finds Plaintiff's motion to amend his Complaint is unduly delayed under Rule 15.

The Court also concludes that allowing the proposed amendment would prejudice Defendants. First, Plaintiff's assertion that Defendants "will not expend *any* additional resources to conduct discovery and prepare for trial," is an overstatement. *See* Br. in Supp. of Mot. to Amend., D.E. 83-1, at 12 (emphasis in original). Plaintiff's proposed claim for monetary damages is tied to his assertion that Defendants improperly considered his past crimes, and therefore wrongly denied Plaintiff his parole. Therefore, to determine Plaintiff's damages, both parties

would have to engage in significant additional discovery to ascertain the damages that Plaintiff has suffered because of his continued confinement. *Red Clay Consol. Sch. Dist. v. T.S.*, No. 10-00784, 2011 WL 4498964, at *4 (D. De. 2011) (finding prejudice under Rule 15 where the proposed counterclaim would require the plaintiff to "to conduct additional discovery beyond what has already been produced and beyond what is feasible under the governing discovery timeline. Additionally, Plaintiff would likely have to obtain additional expert analysis and develop new legal strategies"). Further, the extent of this additional discovery and its effect on the current trajectory of an already aged case is unknown. But it is certainly plausible that the amendment would require additional discovery. The proposed amendment does not specify the nature or basis of the monetary damages that Plaintiff seeks. If, for example, Plaintiff seeks economic damages, that would likely require fact and perhaps even expert discovery into Plaintiff's earnings before he was incarcerated, his education and vocational skills, and his current and future employment prospects and earning capacity. If Plaintiff seeks emotional distress damages, that also would likely require fact and expert discovery to assess, among other things, causation, the nature and extent of any such emotional distress, and whether any other events or experiences in Plaintiff's life caused or exacerbated any such emotional distress. In any event, the proposed claim would certainly expand discovery beyond what the Third Circuit instructed, namely "discovery to determine whether the retroactive application of the 1997 Amendments to Holmes 'create[d] a significant risk of prolonging [his] incarceration.'" *Holmes*, 14 F.4th 250, at 268 (quoting *Garner*, 529 U.S. at 251).

### ii. Futility

Finally, this Court finds Plaintiff's proposed amendment fails under Rule 15 because it is futile. Defendants argue this Court should deny Plaintiff's motion under Rule 15 because his proposed amendment for monetary damages would fail as a matter of law due to (1) the doctrines

of absolute and qualified immunity; and (2) a lack of a constitutional right to parole. Letter Br. in Opp'n to Mot. to Am., D.E. 86, at 4, 12-16. On the other hand, Plaintiff argues that further discovery is needed to determine if these doctrines apply. Reply Br., D.E. 89, at 6-7. He also contends that Section 1983 allows for monetary damages, and therefore Plaintiff's constitutional right to parole is irrelevant. Reply Br., D.E. 89, at 10-13. This Court agrees with Defendants and finds that Plaintiff's proposed amendment is futile under the doctrine of absolute immunity.

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Society v. Valley Forge Ins. Co.,* 424 F. App'x 86, 90 (3d Cir. 2011) (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)); *see also* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed. 2010).

To determine whether an amendment would be "properly dismissed," the Court employs the same standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue.").

The Third Circuit has found that parole board members are entitled to absolute immunity when they are engaged in adjudicatory acts. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.

1989).  "Absolute immunity, however, does not extend to a parole board member's action in performing executive or administrative functions."  *See Norman v. N.J. State Parole Bd.*, No. 17-4413, 2020 WL 2537577 at *2, (D.N.J. May 18, 2020).  Although this distinction is not always abundantly clear, caselaw within this District holds that the decision to grant or deny parole is considered an adjudicatory act.  *See Fields v. Plousis*, No. 14-1139, 2015 WL 9304545, at * 4 (D.N.J. Dec. 21, 2015) ("Defendants . . . are entitled to absolute immunity for their decision to deny Plaintiff release on parole as this is an adjudicatory act and not an executive, administrative, or investigative function."); *Williams v. Consovoy*, 333 F. Supp. 2d 297, 300 (D.N.J. 2004) ("[T]he court of appeals has held in the parole board context that hearing evidence; making recommendations as to whether to parole a prisoner; and making decisions to grant, revoke or deny parole are adjudicatory acts for which the actor is entitled to absolute immunity.") (internal citations omitted).

The Defendants in this case serve, respectively, as the executive director, chairman, and vice chairman, of the New Jersey State Parole Board.  Compl., D.E. 1, at ¶ 9(2).  Accordingly, their roles were undoubtedly adjudicatory in their involvement in the denial of Plaintiff's release.  *See Fields*, 2015 WL 9304545, at *4 (finding that defendant was entitled to absolute immunity because he acted in his adjudicatory capacity when denying the plaintiff's appeal of the Board's decision).  Plaintiff's attempt to characterize Defendants' actions as an administrative function is unavailing.  Indeed, Plaintiff's own Complaint alleges that Defendants' denial of his parole was improper because Defendants wrongly considered his past crimes.  *See* Compl., D.E. 1, at ¶60(f) ("The retroactive application of statutory law referred to within this [C]omplaint constitutes a violation of the ex post factor clause of the United States Constitution . . . .").  Because Plaintiff's

15

request for monetary damages would fail under the doctrine of absolute immunity, this Court finds Plaintiff's proposed amendment to be futile. *See Fields*, 2015 WL 9304545, at *4.

Based on this Court's determination regarding absolute immunity, it declines to address Defendants' arguments that Plaintiff's proposed amendment would be futile under the doctrine of qualified immunity or regarding the lack of the constitutional right to parole. *See e.g.*, *Smart Pharmacy, Inc. v. Medco Health Solutions, Inc.*, No. 11-6485, 2014 WL 3735344, at *4 (D.N.J. Jul. 29, 2014) (declining to address arguments regarding futility related to the plaintiff's motion for leave to amend because the Court already denied the request based on Rule 16 and undue prejudice grounds); *Gotham City Orthopedics*, *LCC v. Aetna Inc.*, No. 20-19634, 2021 WL 9667963, at *10 (D.N.J. Sept. 10, 2021) (declining to address the defendants' additional futility arguments).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend to add a claim for monetary damages, D.E. 83, is denied.  An appropriate Order accompanies this Opinion.


*/s Michael A. Hammer*
**United States Magistrate Judge**


Dated: November 17, 2023